# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DESHUN WASHINGTON,         )
         )
    Petitioner,        )
         )
    vs.         )        Case No. 4:03CV49RWS/MLM
         )
DON ROPER,         )
         )
    Respondent.        )

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Deshun Washington ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 4. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 8. Petitioner filed a Traverse. Doc. 13. Petitioner is currently incarcerated in the Potosi Correctional Facility. Respondent, as the superintendent of that institution is, therefore, the proper party respondent. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 7.

## I.
## BACKGROUND

On December 12, 1996, an indictment issued in the City of St. Louis, Missouri, charging Plaintiff with murder in the first degree in violation of Mo. Rev. Stat. § 565.020 in that on October 9, 1996, after deliberation, Petitioner knowingly killed Ulysses Holt by beating him repeatedly with tree branches and a concrete block. Resp. Ex. D at 19.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

On the afternoon of October 9, 1996, the victim's neighbor was outside working in the yard when she noticed a maroon minivan drive by. About forty-five minutes later, that neighbor's husband discovered the body of an elderly man in a dry creek bed in north St. Louis County. One of the officers at the scene found an insurance card next to the body. The officer issued a "wanted" on the vehicle matching the identification number on the card and the description of the victim's minivan. A concrete block found near the body was also seized at the crime scene.

An officer noticed a maroon minivan matching the description. The officer pursued the minivan, which collided with another vehicle. The two individuals in the minivan got out and ran away on foot. Two males, Defendant and James Nelson, were apprehended by officers. Officers found a portable stereo, a thermal underwear shirt, a T-shirt, and latex gloves inside the minivan.

After the victim's grandson identified the body, an autopsy was performed. The victim's wrists and ankles had been bound together. The body had multiple bruises, scrapes, and lacerations. There was severe damage to the victim's head, including an extensive skull fracture. The doctor who performed the autopsy concluded that the cause of death was a blow to the head.

The victim's grandchildren identified the portable stereo as belonging to their grandfather. A search of Defendant upon his arrest uncovered a green coin purse, which was also identified by the victim's grandchildren as belonging to the victim.

---

[1]     In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)). The law is clear that factual findings by state trial and appellate courts shall be presumed to be correct unless the federal court concludes that the state court findings are an unreasonable application of the facts in light of the evidence presented. See id. Additionally, the Eighth Circuit has held that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also, Laws v. Armontrout, 863 F.2d 1377 (8th Cir. 1988); Brown v. Lockhart, 781 F.2d 654, 658 (8th Cir. 1986). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Both Defendant and James Nelson were under the age of seventeen and were taken into custody of the juvenile court. Detective Wild interviewed Defendant and James Nelson separately while in the presence of their parents. Defendant agreed to waive his rights and speak with Detective Wild. Defendant denied knowing about the murder. Defendant told Detective Wild that he got the minivan from Diatta Crockett. Defendant said he ran from the police because he thought the minivan might have been stolen. Defendant admitted he knew the victim and had done some yard work for him in years past.

On October 10, the juvenile officer filed a petition in the juvenile court charging Defendant with tampering in the first degree and resisting arrest. Earlier that morning, Detective Wild received a call from Defendant's mother. Defendant's mother told Detective Wild that Defendant said he found the victim's wallet earlier in the day and put it in his bedroom dresser. Detective Wild sent an officer over to retrieve the wallet. Upon a warrant search of Defendant's room later that day, officers seized a latex glove and a tennis shoe with a spot of blood on it.

On October 11, after further questioning by Detective Wild, James Nelson led officers to two sewers where Defendant hid some items after removing them from the van. Officers found a pair of latex gloves in one sewer and in the other sewer, the victim's shotgun and his checkbook.

The police also spoke with Diatta Crockett and Tyrhan Hardy, both of whom observed Defendant driving the maroon minivan on the afternoon of October 9, 1996. Both saw a shotgun and a stereo inside the van. Both observed that Defendant was using a towel or a T-shirt to drive the minivan. When Tyrhan Hardy asked Defendant if the car was stolen, Defendant just smirked. When Diatta Crockett jokingly asked Defendant if he had killed somebody for the car, Defendant responded "something like that."

On October 14, the juvenile officer added charges of first-degree murder, first-degree robbery and unlawful use of a weapon to the petition charging Defendant. The juvenile officer then filed a motion to dismiss the juvenile case and certify Defendant as an adult. On November 19, 1996, the juvenile court held a certification hearing. Defendant was represented by counsel at the hearing. The juvenile court certified Defendant as an adult and transferred the case to the adult court.

Detective Wild was notified that Defendant had been certified as an adult. Detective Wild picked Defendant up from the juvenile detention center and took him to the police station for an interview. Detective Wild handed Defendant a "Waiver of Rights" form and read him his rights. Defendant signed the form and voluntarily agreed to speak. At first, Defendant made

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

statements consistent with his previous statements. In the end, after being confronted with all the evidence against him, Defendant admitted he acted alone and killed the victim. Defendant's statement was taped. Defendant stated he went over to the victim's house to get the minivan. He wore latex gloves so he would not leave fingerprints. When Defendant demanded the keys, the victim refused. Defendant then retrieved some long underwear and tied up the victim. Defendant then put the victim, his stereo, and his shotgun in the minivan. The victim asked many questions and managed to kick Defendant. After becoming angry, Defendant pulled over and dragged the victim into a wooded area near a creek bed. The victim made noise, so Defendant hit him on the head twice with a big stick. Defendant then picked up a large block and struck the victim's head. At that point, the victim no longer made a noise. Defendant then went back to his mother's home where he did dishes, watched videos, and changed his shoes. Defendant took the money out of the victim's wallet and put it in his dresser. Defendant then picked up James Nelson from school. Along the way, Defendant ran into Diatta Crockett and others, who threw rocks at the minivan and broke out a window. Eventually, James Nelson convinced Defendant to dump the shotgun and latex gloves down a sewer drain. After his statement, Defendant agreed to do a reenactment of the events of that night for the police. ...

[T]he State presented testimony from a DNA expert who testified the blood found on Defendant's shoe was an exact match to the victim's blood. The expert testified the chances of blood coming from another individual were one in 5.5 billion.

Defendant testified on his own behalf. He denied any involvement in the murder and claimed he found the victim's wallet earlier that day.

State v. Washington, 971 S.W.3d 671, 673-75(Mo. Ct. App. 1999).

The jury found Petitioner guilty of murder in the first degree and assessed punishment at imprisonment for life without eligibility for probation or parole. Resp. Ex. D at 57. Petitioner filed a direct appeal in which he raised the following issues: (1) the trial court erred in overruling Petitioner's objections to the admission of his statement to Detective Wild a few hours after Petitioner had been transferred to adult court in that Petitioner invoked his right to counsel in juvenile court, and (2) the trial court abused its discretion by overruling objections to the prosecutor's request for Petitioner to pick up the concrete block at trial. Resp. Ex. F at 12-13. On November 9, 1999, the Missouri appellate court denied Petitioner's direct appeal and affirmed Petitioner's conviction. Resp.

4

Ex. H, State v. Washington, 9 S.W.3d 671 (Mo. Ct. App. 1999). On February 22, 2000, the Missouri Supreme Court denied Petitioner's application for transfer. Id.

Petitioner filed a pro-se post-conviction relief motion pursuant to Rule 29.15. Resp. Ex. I at 3. Counsel was appointed and Petitioner filed an amended post-conviction relief motion. See Resp. Ex. I at 20. Petitioner's pro-se claims for post-conviction relief were incorporated by reference in Petitioner's First Amended Motion. Resp. Ex. I at 97. Petitioner's First Amended Motion for post-conviction relief was denied by the motion court by Order dated January 16, 2001. See Resp. Ex. I at 98. Petitioner filed an appeal of the motion court's denial of his post-conviction relief motion in which he raised the following issues: (1) Petitioner received ineffective assistance of counsel because his trial attorney failed to timely move for a mistrial when a spectator said during Petitioner's testimony that Petitioner was a liar; (2)Petitioner received ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's improper argument in which the prosecutor said that Petitioner's mother "spent too much time at her job" and "didn't spend enough time raising [Petitioner] right, and he turned into a killer"; and (3) Petitioner received ineffective assistance of counsel because his trial attorney failed to strike a venireperson for cause. See Resp. Ex. J. By Order dated February 15, 2002, the Missouri appellate court denied Petitioner's appeal of the motion court's denial of post-conviction relief. Washington v. State, 64 S.W.2d 868 (Mo. Ct. App. 2002) (per curiam); Resp. Ex. L.

On January 24, 2003, Petitioner filed a Petition pursuant to 28 U.S.C. § 2254. In his § 2254 Petition Petitioner raises the following issues:

> (1) The trial court erred in admitting Petitioner's statements to the police because these statements were obtained in violation of Petitioner's right to counsel;
>
> (2) The trial court erred in overruling Petitioner's objections to the prosecutor's request that he pick up a concrete block;

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(3) Petitioner received ineffective assistance of trial counsel because his counsel failed to properly object to the prosecutor's improper closing argument which appealed to past victimization of some members of the jury;

(4) The trial court erred in failing to respond the prosecutor's argument that was designed to bolster the credibility of the State's witness, Diatta Crockett;

(5) Petitioner received ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's addressing matters during opening argument which the prosecutor knew were outside the scope of evidence;

(6) The prosecutor improperly used peremptory strikes to strike African Americans from the jury panel;

(7) Petitioner received ineffective assistance of counsel because his trial counsel failed to move to suppress evidence obtained as a result of an illegal search and seizure;

(8) Petitioner received ineffective assistance of counsel because his trial counsel failed to timely move for a mistrial when, during Petitioner's testimony, a spectator said that Petitioner was a liar;

(9) Petitioner received ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's statement during closing argument that Petitioner turned into a killer because of his mother's supposed neglect; and

(10) Petitioner received ineffective assistance of counsel because his trial counsel failed to strike a venireperson.

Doc. 4.

### III.
### EXHAUSTION and DEFAULT ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (Sweet). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. See id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991) (Coleman)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id.

A state prisoner can overcome procedural default if he or she can demonstrate cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice. See Coleman, 501 U.S. at 750-51. See also, Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997). "A habeas petitioner who wishes to have a procedurally defaulted claim [considered] on its merits now 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing Sawyer v. Whitley, 505 U.S. 333 (1992)). Actual innocence is required to meet the miscarriage-of-justice exception to the procedural requirements described above. See Sweet, 125 F.3d at 1152 (citing Schlep v. Delo, 513 U.S. 298, 316 (1995)). Indeed, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Id. (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. See Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988) (Smittie).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

"If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (Clark) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002) (Randolph), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. See id. at 405.

In Duncan v Walker, 533 U.S. 167, 178-79 (2001) (Duncan), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." See e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (O'Sullivan ); Rose v. Lundy, 455 U.S. 509, 518-19 (1982) (Rose). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" Duncan, 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

have the first opportunity to review this claim and provide any necessary relief." The Court in <u>Duncan</u> further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. <u>See</u> 533 U.S. at 180. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" <u>Id.</u> (quoting <u>Rose</u>, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in <u>Duncan</u>, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2254(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

<u>Duncan</u>, 533 U.S. at 179-80.

Respondent argues that Petitioner has procedurally defaulted Grounds 3-7 because he failed to raise these issues before the Missouri appellate court. Petitioner failed to raise Grounds 3, 5, and 7, alleging ineffective assistance of trial counsel, in the appeal of his post-conviction relief motion. <u>See</u> Resp. Ex. 10. Additionally, Petitioner failed to raise the issues of Ground 4 and 6, alleging trial court error, in his direct appeal. <u>See</u> Resp. Ex. 6. As such, the court finds that Petitioner has procedurally defaulted Grounds 3-7.

As stated above, a habeas petitioner who procedurally defaults claims may nonetheless raise them in a § 2254 petition if he can show cause and prejudice for his default or actual innocence. Petitioner contends that he can overcome procedural default of Grounds 3-7 because he is actually innocent of the murder of which he was convicted. <u>See</u> Doc. 13 at 9. In support of his argument that he is actually innocent, Plaintiff argues that he has new evidence that officers did not have a search

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

warrant when they entered his mother's home. Petitioner has submitted an affidavit from his mother, Hannah Williams, in which affidavit Ms. Williams states, in relevant part, as follows:

> On October 10, 1996, I arrived at my home located at 9850 Jacobi Ave. in the County of St. Louis, MO on or about 8:45 p.m. .... As I got out of my car I was approached by officers and told that they had a search warrant to search my home, the officer/detective flashed a piece of folded paper and stuck it back in his pocket. ... At about 9:30 p.m. the detective came to me and said they needed to search the garage and gave me a paper to sign giving them permission to search the garage. ... I signed the paper because I thought they already had a warrant and the other one was on the way (like the officer said), but never got there.

> ... [O]n October 18, 2001, I went to the County records department to obtain a copy of the supposed search warrant and was told by the clerk ... that there was no search warrant on file, for that date.

Pet. Ex. 2.

Petitioner has also submitted with his Traverse a copy of the consent to search form which was signed by Ms. Williams on October 10, 1996. See Pet. Ex. 3. The form states that Ms. Williams was consenting to the search of a Chevrolet Blazer and the search of her garage. See id. Petitioner argues that evidence seized from his bedroom of his mother's home and/or the garage and car was unlawfully seized; that without this evidence he would not have been convicted; and that, as such, he has "brought forth a colorful showing of his innocence." Doc. 13 at 12.

The court notes that Nick Wild, a detective with the St. Louis County Police Department testified at Petitioner's trial. Detective Wild testified that on October 10, 1996, he requested that a search warrant be issued for the residence of Petitioner's mother, 9850 Jacobi; that he obtained the search warrant at about 5:00 p.m.; that he and other officers arrived at the residence at about 7:20-7:30; that when officers knocked on the doors of the residence no one answered; that they waited until about 8:20 when Ms. Williams arrived home; that offices then told her of the search warrant and asked for a key; that, pursuant to her request, officers told Ms. Williams she could be present for the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

search; and that officers gave Ms. Williams a copy of the search warrant.  See Resp. Ex. A-III at 1585-94.  Detective Wild read the contents of the search warrant to the jury. See id. at 1587.

The Eighth Circuit has explained as follows in regard to establishing actual innocence sufficient to overcome procedural default:

> To fit within the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 321, 115 S.Ct. 851, 864, 130 L.Ed.2d 808 (1995). With respect to the requisite showing of actual innocence, we have held that:
>
> [A] petitioner who raises a gateway claim of actual innocence must satisfy a two-part test. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial. Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The actual innocence exception requires review of procedurally barred, abusive, or successive claims only in the narrowest type of case--when a fundamental miscarriage of justice would otherwise result. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir.1996) (quotations, citations, and alteration omitted), cert. denied, 520 U.S. 1128, 117 S.Ct. 1273, 137 L.Ed.2d 350 (1997).
>
> Due to important comity and finality interests, the actual innocence gateway is very limited. Few petitions are "within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.'" Schlup, 513 U.S. at 315, 115 S.Ct. at 861 (quoting McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991)). Few petitions require the exercise of "the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993). See also McCleskey, 499 U.S. at 494, 111 S.Ct. at 1470 ("narrow class of cases" and "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime"). ...
>
> In addressing this issue, the Court considered the threat to scarce judicial resources and the principles of finality and comity. See id. at 324, 115 S.Ct. at 865. The Schlup court stated:
>
> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial. Because such evidence is obviously

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

unavailable in the vast majority of cases, claims of actual innocence are rarely successful. Id. at 324, 115 S.Ct. at 865.

Weeks v. Bowersox, 119 F.3d 1342, 1351(8th Cir. 1997).

The court finds that Petitioner has failed to support his claim of actual innocence with new reliable evidence. Rather, Petitioner makes evidentiary arguments regarding the existence and/or the validity of the search warrant which arguments were available prior to or at trial. Moreover, Petitioner makes no more than a bare conclusory assertion that Ms. Williams testimony would establish that evidence against him was not admissible and that, therefore, he would not have been convicted of the murder. Clearly, Ms. William's affidavit is not exculpatory. Moreover, as described above, evidence was presented at Petitioner's trial that officers had a search warrant for 9850 Jacobi, Ms. Williams' residence, and that Ms. Williams was given a copy of the search warrant prior to the search. Petitioner's bare conclusory assertion is not sufficient to invoke the actual innocence exception. See id. at 1352-53 (citing Wyldes v. Hundley, 69 F.3d 247, 254 (8th Cir.1995)). The court finds, therefore, that Petitioner has not established actual innocence for purposes of excusing his procedural default of Grounds 3-7.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Petitioner's § 2254 petition was received by this court on June 2, 1999, and, therefore, the AEDPA standards apply to his petition for writ of habeas corpus.

In Williams v. Taylor, 529 U.S. 363, 412-13 (2000) (Williams), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "Rather the application [by the state-court] must also be unreasonable." Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), (Copeland), cert. denied, 532 U.S. 1024 (2001). See also, Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001), cert. denied, U.S. 1138 (2002).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." Id. at 407. See also, Price v. Vincent, 123 S.Ct. 1848 (May 19, 2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

law, as long as the state court's decision is not contrary to such law.  See Early v. Packer, 537 U.S. 3, 8 (2002) (Early).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal rule from [Supreme Court] cases but unreasonably appl[y] it to the facts of the particular state prisoner's case" or "unreasonably [extend] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably [refuse] to extend that principle to a new context where it should apply."  Id.  See also, Perry v. Johnson, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in Perry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable."  Id. at 793.  The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts [including the Eighth Circuit] have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue."  Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness."  Boyd v. Minnesota, 274 F.3d  497, 500 (8th Cir. 2001) (Boyd).   The state court's decision "must be rebutted by clear and convincing evidence."  King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001) (King), cert. denied, 535 U.S. 934 (2002).  For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record. See Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applies federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 124 S.Ct. 2140, 2149 (2004) (Yarborough).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v. Leubbers, 2004 WL 1315842 at *2 (8th Cir. June 15, 2004) (Brown). The court held in Brown that:

> From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> whether the federal constitutional claim was considered and rejected by that
> court.

2004 WL 1315842 at *2.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." <u>Id.</u> (citing <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir.1999).   The court further held in <u>Brown</u> that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.**"**

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, "because there is no apparent state-court adjudication to which" this standard can be applied.  <u>Brown v. Luebbers</u>, 344 F.3d 770, 785 (8th Cir. 2003), <u>rev'd on other grounds</u>,  2004 WL 1315842 at *2 (8th Cir. June 15, 2004) (citing <u>Robinson v. Crist</u>, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review.")).

### III.
### STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense."  <u>Auman v. United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(1984) (Strickland)).  The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." See id. at 690.  To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice.  Id. at 694.  To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.  The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]."  Strickland, 466 U.S. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

[P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides.  No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.  Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted).  ...

Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to

17

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

# IV.
## DISCUSSION

**Ground 1- The trial court erred in admitting statements Petitioner made to police because these statements were obtained in violation of Petitioner's right to counsel:** [2]

In Ground 1 Petitioner alleges that his constitutional rights were violated because statements Petitioner made to Detective Wild given after he was certified as an adult were improperly admitted into evidence during his trial because while Petitioner was in juvenile court he allegedly invoked his right to be represented by counsel. Petitioner states that it is undisputed that, in the presence of his mother at the juvenile detention center, he initially waived his rights and spoke with Detective Wild and denied knowing anything about Mr. Holt's murder. Petitioner argues that after being transported to the police station and placed in an interview room he asserted his right to counsel, that he made it clear that he retained counsel, and that the invocation of his right to silence was not "scrupulously honored" as Detective Wild proceeded to interrogate him. Doc. 13 at 3.

---

[2] In Petitioner's § 2254 Petition he states the issue raised in Ground 1 as an allegation of a violation of his Sixth Amendment right to counsel. This is the issue which Petitioner raised as Argument 1 before the Missouri Appellate Court. See Resp. Ex. F at 14. There is, however, verbiage in Petitioner's Traverse which indicates that before this court he is alleging a violation of the Fifth Amendment in that his statements were not voluntary and that his Miranda rights were violated. See Doc. 13 at 1-7. To whatever extent Plaintiff's Traverse alleges a violation of the Fifth Amendment, these claims have been procedurally defaulted because they were not raised by Petitioner before the Missouri appellate court. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (holding that to preserve issues for federal habeas review, a state prisoner must fairly present his claims to state court during his direct appeal or in post-conviction proceedings).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As noted by the Missouri appellate court, on October 10, 1996, Petitioner was initially interviewed as a juvenile. After he admitted that he obtained the van from Diatta Crockett and that he knew Mr. Holt, the victim, Petitioner was charged with tampering and resisting arrest in juvenile court. See Washington, 9 S.W.3d at 674. On October 14, 1996, Petitioner was also charged in juvenile court of first-degree murder, first-degree robbery, and unlawful use of a weapon. On October 19, 1996, Petitioner had a certification hearing at which time he was represented by counsel. See id. Petitioner was then certified as an adult.

Petitioner's trial attorney filed a motion to suppress the statement Petitioner made to police after he was certified as an adult. Detective Wild testified at the suppression hearing that he encountered Petitioner shortly after he arrived at the police offices in Clayton; that because Petitioner was a juvenile, juvenile procedures were followed whereby a juvenile officer would read Petitioner his rights; that Detective Wild first interviewed Petitioner in a conference room in the juvenile court; that those present included a deputy juvenile officer, Petitioner's mother, and his mother's fiancé; that Petitioner was advised of his rights by an officer's going through the "rights form" from "top to bottom"; that Petitioner signed the rights form; that Petitioner said verbally that he understood each of his rights, including the right to talk with a lawyer before the police asked him questions and the right to have a lawyer present when the police asked questions; that Petitioner was told that anything he said could be used against him in Family Court and that if he was charged with a felony and was certified to stand trial as an adult, any statement he made would be used against him in trial in adult court; and that Petitioner and his mother both signed the waiver of rights. Resp. Ex. B at 52-61.

Detective Wild further testified that after the waiver was signed he obtained a statement from Petitioner in which Petitioner said he had gotten the van at issue from a friend and said that at one time Petitioner raked leaves for Mr. Holt, the victim. Detective Wild then testified that at about

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1 or 2 a.m. that morning Petitioner's mother, Ms. Williams, called Detective Wild's office; that Ms. Williams said that Petitioner told had told her in private that earlier in the day he had found a wallet and brought it home after taking some money out of it; and that when she checked the wallet it contained identification of Mr. Holt.  See id. at 64-66.  Detective Wild continued to testify that after the search of Ms. Williams' home was executed he became aware that Petitioner had been certified as an adult and that on November 19, 1996, he took custody of Petitioner from the Family Court and brought him to the interview room at police headquarters.  Detective Wild testified that he then advised Petitioner of his rights using the standard Warning and Waiver form; that these rights included Petitioner's right to remain silent, to consult with an attorney prior to the interview, to have an attorney present at the time of the interrogation, and to have an attorney appointed if he could not afford an attorney; that Detective Wild explained to Petitioner that anything Petitioner said could and would be used against him a court of law; that Petitioner indicated that he understood his rights; that Petitioner signed the standard Warning and Waiver form; and that Detective Wild then conducted an interview of Petitioner.  See id. at 79-88.  The form which Petitioner signed after being certified as an adult states, among other things, that Petitioner read the statement of his rights, that he understood what his rights were, that he was going to make a statement and answer questions, and that he did not want a lawyer at that time.  See id. at 84.  Detective Wild further testified that at no time while Petitioner's case was pending in juvenile court was he aware that Petitioner was represented by an attorney and that at no time after Petitioner was certified as an adult did Petitioner indicate that he wanted to consult with an attorney, his mother, or his mother's fiancé.  See id. at 97-98.

Petitioner testified at his suppression hearing that on November 19, 1996, that when he was read his Miranda Rights, he told Detective Wild that he wanted to call his attorney; that he was not permitted to do so;  and that he was told it was too late.  See id. at 145-46.  Petitioner further

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

testified that after Petitioner was certified his attorney had advised him that if Petitioner was questioned he should call the attorney. Petitioner also testified that he asked to call his mother which request was denied initially; that he was permitted to call his mother at 2:00 a.m.; and that he did not ask for an attorney during the interview prior to the certification because his mother was present. See id. at 149. The court afforded Petitioner the opportunity to submit an affidavit from his attorney for purposes of the motion to suppress. The court ordered that if an affidavit was not filed within ten days the court would re-set the matter for a hearing. The trial court scheduled a hearing for May 29, 1998, and Petitioner's attorney did not appear on that date. See id. at 158-60. On August 21, 1998, the trial court denied Petitioner's motion to suppress. See Resp. Ex. D at 36.

Upon addressing the issue raised by Petitioner in Ground 1, the Missouri appellate court stated as follows:

> In his first point, Defendant contends the trial court erred in overruling his motion to suppress and objection at trial to the admission of Defendant's statements to Detective Wild. Defendant asserts the statements were obtained in violation of his Sixth Amendment right to counsel. Because the police were aware that he was represented by counsel in his juvenile proceeding, they violated his rights by not contacting his attorney prior to taking the statements. We disagree.

> Review of a trial court's ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's decision. State v. Kampschroeder, 985 S.W.2d 396, 398 (Mo.App. E.D.1999). Deference is given to the trial court's superior opportunity to determine credibility of witnesses. State v. Rousan, 961 S.W.2d 831, 845 (Mo.1998). As in all matters, a reviewing court gives deference to the trial court's factual findings and credibility determinations but reviews questions of law de novo. Id. The issue of whether the Sixth Amendment has been violated is a question of law, and therefore, we review de novo.

> The Sixth Amendment right to counsel attaches only at or after the time that adversary judicial proceeding have been initiated against a person. State v. Parker, 886 S.W.2d 908, 918 (Mo.1994); State v. Beck, 687 S.W.2d 155, 159 (Mo. banc 1985). Attachment of the right to counsel occurs at the initiation of adversary judicial proceedings against an accused by way of formal charge, preliminary hearing, indictment, information, or arraignment.

21

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

<u>Beck</u>, 687 S.W.2d at 160. Once the right has been invoked, subsequent waiver during a police-initiated custodial interview is invalid. <u>Parker</u>, 886 S.W.2d at 918. The Sixth Amendment right is offense-specific and cannot be invoked for future prosecutions. <u>State v. Johnston</u>, 957 S.W.2d 734, 750 (Mo.1997); <u>State v. Williams</u>, 922 S.W.2d 845, 851 (Mo.App. E.D.1996).

      Here, Defendant's Sixth Amendment right to counsel for the murder of the victim had not attached because formal proceedings had not begun. Defendant had not been indicted or charged in the adult court at the time of the interview by Detective Wild. In addition, any Sixth Amendment right to counsel that had attached in the juvenile proceeding did not transfer after Defendant was certified as an adult. <u>State v. Wilson</u>, 826 S.W.2d 79, 83 (Mo.App. E.D.1992). The certification proceeding was completed prior to his arrest as an adult. <u>See Id.</u> Moreover, Defendant voluntarily waived his rights and made the statements to Detective Wild. "The request for an attorney on a different matter does not vitiate any subsequent voluntary statements given without counsel by a defendant." <u>Id</u>. Thus, there is no Sixth Amendment violation.

      Defendant further argues recent legislation allowing prosecutors to become more involved in juvenile court proceedings before transfer to adult court has blurred the line between juvenile proceedings and general criminal proceedings. Defendant cites Sections 211.068 and 211.071.5, RSMo Cum.Supp.1998, which allow prosecutors to review evidence assembled by juvenile officers and testify at the certification hearing. Defendant contends, "[t]his new law was enacted after Wilson was decided, and it is questionable whether the court in that case would have found that juvenile and adult court were 'different matters' if the current statutory scheme would have been present." We are not persuaded. The fact that the statutes allow contact between juvenile officers and prosecutors does not dissolve the line between the juvenile system and the adult system. Point denied.

<u>Washington</u>, 9 S.W.3d at 675-76.

      Pursuant to <u>Williams</u>, this court must consider federal law applicable to the claim made by Petitioner in Ground 1 that his statements to police should not have been admitted because they were obtained in violation of his Sixth Amendment right to counsel.   As Petitioner contends that he invoked the right to counsel while being interrogated as a juvenile and that this right carried over to his interrogation as an adult, the court will consider federal law applicable to a suspect's invoking the right to counsel and when that right attaches.  The Supreme Court held in <u>Kirby v. Illinois</u>, 406 U.S.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

682, 688 (1972) (Kirby), that "[i]n a line of constitutional cases in this Court stemming back to the Court's landmark opinion in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." The Court further held:

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.
>
> It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. See Powell v. Alabama, 287 U.S., at 66--71 (other citations omitted).

Kirby, 406 U.S. at 689-90.

The Eighth Circuit has clarified that:

> "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." Maine v. Moulton, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). Accordingly, "once this right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective." McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). ...
>
> In general, the Sixth Amendment right to counsel attaches when the State initiates an adversary judicial proceeding "by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion); accord United States v. Gouveia, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984).

Beck v. Bowersox, 362 F.3d 1095, 1100-02 (8th Cir. 2004) (Beck).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The law is clear that explicit and implicit findings by state trial and appellate courts are presumed to be correct. See Blair v. Armontrout, 916 F.2d 1310, 1317-18 (8th Cir. 1990). See also, Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991); Laws v. Armontrout, 863 F.2d 1377 (8th Cir. 1988); Brown v. Lockhart, 781 F.2d 654, 658 (8th Cir. 1986). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989).

When dealing with mixed questions of law and fact, the presumption of correctness has a different application. No presumption of correctness attaches to the legal conclusions or determinations reached in mixed questions. Those are reviewed de novo on federal habeas review. "However, the presumption of correctness will continue to apply to any findings of fact underlying mixed questions, typically 'ultimate' constitutional issues such as due process." Case, 887 F.2d at 1393 (citing Rushen v. Spain, 46 4 U.S. 114, 120 (1983); Marshall v. Lonberger, 459 U.S. 422, 431-432 (1983)). This will even be the case when those findings might resolve or dispose of the ultimate mixed question. See Case, 887 F.2d at 1393. See also, Deputy v. Taylor, 19 F.3d 1485, 1494 (3rd Cir. 1994); Jenner v. Smith, 982 F.2d 329, 331 (8th Cir.1993).

The court first notes that the Missouri appellate court deferred to the factual and credibility findings of the trial court although it noted that ultimately whether Petitioner's Sixth Amendment rights were violated is a question of law to be reviewed do novo. The holding of the Missouri appellate court in this regard is consistent with federal law. As stated above, under federal law, the presumption of correctness applies to any finding of fact which underlie mixed questions of fact and law. See Case, 887 F.2d at 1393.

In support of Ground 1 Petitioner claims that the certification hearing was the initiation of adversarial criminal proceedings and that, therefore, his right to counsel attached at that time. See

24

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Doc. 13 at 4. As stated above, the Supreme Court held in <u>Kirby</u>, 406 U.S. at 688, that a person's right to counsel attaches at the time adversary proceedings against him commence. Upon finding that Petitioner's constitutional rights were not violated by the admission of his statements, the Missouri appellate court considered that the Sixth Amendment right to counsel does not attach until the adversary judicial proceedings have commenced. As such, the Missouri appellate court's decision is consistent with the Supreme Court's finding in <u>Kirby</u>, 406 U.S. 688.

The Missouri appellate court stated that because Petitioner had not been charged or indicted in "adult court" at the time he made the statements to Detective Wild, his right to counsel had not attached. The Missouri appellate court concluded, upon considering Missouri law, that any right to counsel that attached in juvenile court did not transfer when Petitioner was certified as an adult and that Petitioner voluntarily waived his rights and made a statement to Detective Wild. Significantly, in <u>Beck v. Bowersox</u>, 362 F.3d 1095, 1101(8th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 232(2004) (<u>Beck</u>), the Eighth Circuit looked to Missouri law to determine when a prosecution commences. The court concluded that under Missouri law "the issuance of an arrest warrant [does] not amount to an initiation of adversary judicial proceedings"; "'[a] prosecution is commenced either when an indictment is found or an information filed.'" <u>Id.</u> The court in <u>Beck</u> further noted that generally "the Sixth Amendment right to counsel attaches when the State initiates an adversary judicial proceeding 'by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" 362 F.3d at 1101 (quoting <u>Kirby v. Illinois</u>, 406 U.S. 682, 689 (1972) (plurality opinion); citing <u>United States v. Gouveia</u>, 467 U.S. 180, 188 (1984)). Clearly under federal law, "[i]t is firmly established that a defendant's sixth or fourteenth amendment right to counsel attaches only after adversarial judicial proceedings have been initiated." <u>United States v. Purham</u>, 725 F.2d 450, 454

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(8th Cir. 1984) (citing United States v. Wade, 388 U.S. 218, 224- 26 (1967); Gilbert v. California, 388 U.S. 263, 267 (1967)).

Petitioner argues that the presence of an attorney at his certification hearing was an invocation of the right to counsel and that, therefore, police could not attempt to obtain a statement from him without the presence of counsel. The Eighth Circuit addressed such an argument where a habeas petitioner argued that "by having the public defender appear with him at [an] extradition hearing, he invoked his right to counsel under the sixth amendment, and therefore that all subsequent statements given to police in the absence of counsel were inadmissible." Chewning v. Rogerson, 29 F.3d 418, 420 (8th Cir. 1994). The Eighth Circuit held that "[i]nitiation of criminal proceedings is ... not the only prerequisite for the right to claim the assistance-of-counsel protections of the sixth amendment. The right is not self-executing but *must be invoked by the person claiming it.*" Id. (emphasis added) (citing Patterson v. Illinois, 487 U.S. 285, 290 (1988) ("[p]etitioner ... at no time sought to exercise his right to have counsel present"). The Eighth Circuit refused in Beck, 362 F.3d at 1102, to interpret federal law to "expand the pretrial Sixth Amendment right to counsel so as to override a suspect's valid Miranda waivers." Thus, pursuant to federal law, the mere presence of counsel at Petitioner's certification hearing was not an invocation of the right to counsel.

Petitioner also argues that representation by counsel in juvenile proceedings carries over to the initiation of adult proceedings. Petitioner, however, had not been indicted or charged in the adult court at the time of the interview by Detective Wild. The Missouri appellate court made it clear that there is a line between the juvenile system and the adult system; that pursuant to Missouri law Plaintiff's arrest was not the initiation of adversary judicial proceedings; and that, as such, to the extent that Petitioner alleged he invoked the right to counsel in juvenile proceedings, this invocation did not carry over to adult proceedings. Such a finding is consistent with federal law. See Beck, 262

26

F.3d at 1101. Pursuant to federal law adversarial proceedings in adult court did not commence merely because a certification hearing was held nor did adversarial proceedings commence when Petitioner was arrested as an adult. See id.

Additionally, the finding of the Missouri appellate court in regard to the line between juvenile and adult proceedings is arguably a matter of State law. Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).

The court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable interpretation of federal law as set forth above. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Beck, 362 F.3d at 1100-02. As such, the court finds that Petitioner's Ground 1 is without merit and that it should be dismissed.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**Ground 2 - The trial court erred in overruling Petitioner's objection to the prosecution's request hat he pick up a concrete block for demonstrative purposes:**

During cross-examination of Petitioner, the prosecutor asked that he pick up the concrete block which was allegedly used to kill Mr. Holt. Petitioner's counsel objected and the trial court overruled the objection. The prosecutor then asked Petitioner if he had seen the block before and Petitioner responded that he had not. The prosecutor also asked Petitioner if Petitioner had held the bock over his head and then slammed it down on top of Mr. Holt. Petitioner's counsel objected to these questions which objections the trial court sustained. Petitioner argues that the demonstration in which he lifted up the rock had no probative value, was prejudicial, and violated his constitutional rights. See Doc. 15 at 8.

Upon addressing the issue raised by Petitioner in Ground 2, the Missouri appellate court stated as follows:

> In his second point, Defendant asserts the trial court erred and abused its discretion in allowing the State to have Defendant lift a concrete block in front of the jury. We disagree.

> The trial court is vested with broad discretion in admitting or rejecting demonstrative evidence, due to its superior vantage point for balancing the probative value of such evidence against its prejudicial effect. State v. Candela, 929 S.W.2d 852, 867 (Mo.App. E.D.1996). Demonstrative evidence which tends to establish any fact in issue or throw light on the issue and aids the jury in arriving at a correct verdict is admissible. Id.

> Here, the State asked Defendant to pick up the concrete block, which the State claimed was the murder weapon. Defendant's objections were overruled and Defendant picked up the concrete block. The demonstration was appropriate to throw light on the issue of whether Defendant was capable of lifting the concrete block. Further, the demonstration would tend to aid the jury in arriving at the correct verdict by showing the jury that Defendant was capable of lifting the murder weapon. The trial court did not abuse its discretion in allowing the demonstrative evidence. Point denied.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The United States Supreme Court held in Estelle v. McGuire that "federal habeas corpus relief does not lie for errors of state law" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984)).  The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )).  Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. See Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Indeed, questions concerning the admissibility of evidence are reviewable in federal habeas corpus proceedings only when the alleged error resulted in a trial so fundamentally unfair as to deny the petitioner due process of the law. See Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), cert. denied, 2005 WL 36242 (U.S. Jan. 10, 2005), (holding that federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights") (citing Estelle, 502 U.S. at 68); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990). See also, Sweet  v. Delo, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to justify the grant of habeas corpus, the error must be "so `gross'... `conspicuously prejudicial'... or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process). Additionally, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." See United States v. Macklin, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir.1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.1996)).

As noted by the Missouri appellate court the demonstration to which Petitioner objects showed that he was capable of picking up the concrete block. Petitioner has not demonstrated that the trial court's permitting him to pick up the concrete block infringed a specific constitutional protection or was so prejudicial as to deny him due process. The court finds, therefore, that the issue raised by Petitioner in Ground 2 is not cognizable pursuant to Petitioner's § 2254 Petition as it addresses the trial court's evidentiary ruling.

Indeed, upon ruling on the issue raised in Petitioner's Ground 2 the Missouri appellate court concluded that it would defer to the trial court's determination as to the probative value of evidence; that evidence is admissible if it tends to throw light on the issue and aids the jury; and that the demonstration was appropriate to aid the jury in determining whether Petitioner was capable of lifting the murder weapon. As stated above, under federal law the admission of evidence is a matter of trial court discretion; it is the trial court's role to determine the probative value of evidence; and evidence is relevant if its probative value outweighs the danger of unfair prejudice. See Macklin, 104 F.3d at 1048. Thus, to the extent that the issue raised in Petitioner's Ground 2 can be considered

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

cognizable pursuant to § 2254, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable interpretation of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that it should be dismissed.

**Ground 8- Petitioner received ineffective assistance of counsel because his trial counsel failed to timely move for a mistrial when, during Petitioner's testimony, a spectator said that Petitioner was a liar:**

Petitioner contends that he was denied effective assistance of counsel because his counsel failed to object when a spectator in the courtroom, who was a member of the victim's family, called Petitioner a liar, "loudly and distinctly enough that the prosecutor and the defense investigator heard it." Doc. 15 at 13. Petitioner asserts that as a result "there was the real possibility that the jury would take the outburst into consideration in evaluating Petitioner's credibility." Id. Petitioner also argues that this "outburst [was] clearly audible to those in the area of the jury box and served to bias the jurors against Petitioner" and that had defense counsel made a motion for a mistrial when the outburst occurred it is more likely than not that the trial court would have been receptive to the request. Id. at 14.

Upon addressing the issue raised in Petitioner's Ground 8, the Missouri appellate court held as follows:

> To obtain relief on a claim of ineffective assistance of counsel, Movant must show that 1) counsel's performance did not conform to the degree and skill, care, and diligence of a reasonably competent attorney, and 2) Movant was prejudiced by his counsel's poor performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Hall, 982 S.W.2d 675, 680 (Mo. banc 1998), cert. denied, 526 U.S. 1151 (1999). A movant must satisfy both the performance prong and the prejudice prong to prevail on a claim of ineffective assistance of counsel. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

We note, in evaluating the performance of counsel under the first prong of the <u>Strickland</u> test, that actions by counsel constituting sound trial strategy are not grounds for ineffective assistance claims. Id. There is a presumption that any challenged action was sound trial strategy and counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment. <u>Strickland</u>, 466 U.S. at 689-90. To prove prejudice, the second prong of the test, Movant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Hall</u>, 982 S.W.2d 680.

In his first point, Movant claims he was denied effective assistance of counsel because his trial attorney failed to timely move for a mistrial after a spectator loudly whispered "liar" during Movant's testimony. Movant alleges he was prejudiced by the outburst, that a mistrial was the only adequate remedy, and a mistrial would have been granted had it been timely requested. The record reveals that Movant's trial counsel approached the bench after direct examination of Movant and informed the court that she and the defense investigator heard someone whisper "liar" loudly while Movant was testifying. At Movant's counsel's request, the court admonished the spectators to "keep your comments to yourself or you get out of this courtroom right now." The following day Movant's counsel requested a mistrial, which was denied by the court.

In its findings of Fact, Conclusions of Law, Order and Judgment of Court on Motion to Vacate, Set Aside or Correct the Judgment or Sentence Pursuant to Rule 29.15 (judgment) the motion court found Movant was not denied effective assistance of counsel by trial counsel's failure to make a futile motion for a mistrial. In reaching this conclusion, the motion court found Movant failed to show that the jury heard the whispered "liar." Moreover, the motion court concluded that the trial court would not have granted the motion for a mistrial because the whisper, even if heard by the jury, was not so prejudicial as to affect the jury's decision.

Mistrial is a drastic remedy, reserved only for the most extraordinary circumstances. <u>State v. Clemons</u>, 946 S.W.2d 206, 217 (Mo. banc 1997). A mistrial should be granted only when there is a grievous error that cannot be remedied otherwise. <u>State v. Witte</u>, 37 S.W.3d 378, 383 (Mo. App. S.D. 2001).

Our review of the record does not leave us with a firm and definite impression that a mistake has been made. Movant has presented no evidence that the jury heard the spectator's whispered comment. In fact, it was noted on the record that the trial judge, who was sitting the same distance from the source of the comment as the jury was, did not hear the comment. Given the circumstances, Movant's counsel properly requested that the spectators be admonished. Movant's counsel was not ineffective for failing to request a

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

mistral when she heard the comment because it would not have been granted
if requested at that time.  Furthermore, in light of the overwhelming evidence
of Movant's guilt[], even if the jury heard the comment, it would not have
affected the outcome of the trial.

Resp. Ex. L at 4.

Pursuant to <u>Williams</u>, the court must consider federal law applicable to Petitioner's Ground 8 in which he alleges ineffective assistance of counsel.  As stated above, the Supreme Court set forth the standard for determining whether a defendant received effective assistance of counsel in <u>Strickland</u>.  Upon finding that Petitioner was not denied effective assistance of counsel, the Missouri appellate court specifically relied upon the two prong standard set forth in <u>Strickland</u> and concluded that Petitioner could not establish prejudice because any request for a mistrial would not have been granted and because of the overwhelming evidence of Petitioner's guilt.  Thus, the Missouri appellate court considered the prejudice prong of the <u>Strickland</u> test for ineffective assistance of counsel and concluded that Petitioner was not prejudice by his counsel's failure to request a mistrial.

In regard to the affect of a spectator's comments on a defendant's constitutional rights, the Eighth Circuit has held that it is not reversible error where the trial court properly instructs the jury to disregard spectator comments and that under such circumstances in denying a motion for a mistrial the court did not abuse its discretion.  <u>See</u> <u>e.g.</u>, <u>United States v. Allen</u>, 247 F.3d 741, 791 (8th Cir. 2001) (holding that the district court acted well within its discretion when denying the defendant's motion to strike the venire panel because an emotional outburst was ambiguous and because the district court instructed the jury to disregard what they heard), <u>rev'd on other grounds</u>, 536 U.S. 953 (2002); <u>United States v. Sublet</u>, 644 F.2d 737 (8th Cir. 1981).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The court finds that the Missouri appellate court's application of <u>Strickland</u> to the issue raised in Petitioner's Ground 8 is consistent with federal law, not contrary to federal law, and a reasonable application of federal law. Moreover, in reaching its conclusion that Petitioner was not denied effective assistance of counsel because his counsel failed to request a mistrial, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 8 is without merit and that it should be dismissed.

**Ground 9 - Petitioner received ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's statement during closing argument that Petitioner turned into a killer because of his mother's supposed neglect:**

In support of the issue raised in Ground 9 Petitioner argues that the prosecutor argued matters not in evidence when in closing argument he said that "Petitioner's mother 'spent too much time at her job' and 'didn't spend enough time raising [Petitioner] right, and he turned into a killer.'" Doc. 15 at 15. Petitioner further contends that because this statement distracted the trier of fact and raises doubts as to the fairness of his trial, he was prejudiced as a result of his counsel's failure to object. <u>See</u> <u>id.</u> at 16.

Upon addressing the issue raised by Petitioner in Ground 9 the Missouri appellate court stated as follows:

> In its judgment, the motion court found Movant was not denied effective assistance of counsel because an objection to the prosecutor's statements would not have been sustained. The motion court concluded the prosecutor was referring only to the murder at trial and not Movant's general character. Moreover, the evidence of Movant's guilt was overwhelming. The result of the trial would not have been different had Movant's counsel objected to the prosecutor's challenged statement. The motion court did not err in denying Movant's claim.

Resp. Ex. L at 4-5.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Pursuant to Williams, the court must consider federal law applicable to the ineffective assistance of counsel issue raised by Petitioner in Ground 9 of his habeas Petition. Under federal law, to establish a violation of due process due to improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (Darden); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also, Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). Petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. See Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's commends so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181). As further said by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

> This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative

35

actions taken by the court." <u>Hernandez</u>, 779 F.2d at 460; <u>see also</u> <u>United States v. Eldridge</u>, 984 F.2d 943, 946-47 (8th Cir.1993).

<u>United States v. Conrad</u>, 320 F.3d. 851, 854 (8th Cir. 2003).

Indeed, the Eighth Circuit has held that a prosecutor did not commit reversible error when, in his final argument, he asked the jury to "please, please do the right thing" and that "the jury's duty was to return a conviction." <u>United States v. Leach</u>, 429 F.2d 956, 964 (8th Cir. 1970) (citing <u>Keeble v. United States</u>, 347 F.2d 951, 956 (8th Cir. 1965); <u>Koolish v. United States</u>, 340 F.2d 513, 533 (8th Cir. 1965); <u>Cochran v. United States</u>, 310 F.2d 585, 589 (8th Cir. 1962)).

Under federal law "[t]he trial court has broad discretion in controlling the direction of opening statements and closing arguments, "and this court will not reverse absent a showing of abuse of discretion." <u>United States v. Johnson</u>, 968 F.2d 768, 769 (8th Cir.1992).

Upon considering the issue raised in Petitioner's Ground 9 the Missouri appellate court stated that the standard applicable to Petitioner's claims of ineffective assistance of counsel is that established by the Supreme Court in <u>Strickland</u>. Specifically, upon considering the issue raised in Petitioner's Ground 9, the Missouri appellate court applied the second prong of the <u>Strickland</u> test and concluded that Petitioner was not prejudiced by his counsel's failure to object to the above quoted prosecutorial argument because had Petitioner's trial counsel objected to the prosecutor's argument the objection would not have been sustained. Thus, the finding of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 9 is not contrary to federal law and is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. <u>See Darden</u>, 477 U.S. at 181; <u>Strickland</u>, 466 U.S. at 687. The court finds, therefore, that Petitioner's Ground 9 is without merit and that it should be dismissed.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**Ground 10 - Petitioner received ineffective assistance of counsel because his trial counsel failed to strike a venireperson**:

In support of Ground 10 Petitioner argues that a venireperson was unqualified because he could not and did not state that he could be fair and impartial notwithstanding the murder of three of his relatives. Petitioner further argues that he received ineffective assistance of counsel because his counsel failed to strike this venireperson for cause. <u>See</u> Doc. 15 at 17-18.

Upon addressing the issue raised in Petitioner's Ground 10, the Missouri appellate court stated, in relevant part, as follows:

> A criminal defendant is entitled to a full panel of qualified jurors before making his peremptory challenges. <u>State v. Plummer</u>, 860 S.W.2d 340, 346 (Mo. App. E.D. 1993). A qualified juror is one in a position to enter the jury box with an open mind, free from bias or prejudice, and not subject to a meritorious motion to strike for cause. <u>Id</u>. at 347. A challenge for cause must be sustained when it has been shown that a venireperson lacks impartiality. <u>Presley v. State</u>, 750 S.W.2d 602, 605 (Mo. App. S.D.), <u>cert. denied</u>, 488 U.S. 975 ( 1988). The bare possibility of bias will not disqualify a venireperson whose answer to a question suggests the possibility of bias but who, upon further questioning, gives unequivocal assurances of impartiality. <u>Plummer</u>, 860 S.W.2d at 349.

> During voir dire by the prosecutor, when asked if any of the jurors had a close friend or family member who had been a victim of a crime, Venireperson Hinkle stated that three of his relatives were recently killed in a shooting. The prosecutor then asked "Is there anything at all about what happened to your relatives or what you know about it that could affect your ability to be fair in this case?" to which Venireman Hinkle responded, "I think I could be fair."

> In its judgment, the motion court found Venireman Hinkle did not answer any question in such a way that a motion to strike for cause would have been sustained. Accordingly, the motion court concluded Movant's trial counsel was not ineffective for failing to make a futile motion to strike for cause.

> In the case before us, Venireman Hinkle did not express any prejudice or bias resulting from his experience nor did he equivocate about his ability to be open minded. Venireman Hinkle's response was not equivocal, and was instead common vernacular for an affirmative response that he could be fair. "The response 'I think so' is not equivocal in the context of voir dire

questioning; it is common vernacular to express a positive response." State v. Wise, 979 S.W.2d 494, 514 (Mo. banc 1994) (other citations omitted). ...

     In support of this point, Movant relies on State v. Gary, 822 S.W.2d 448 (Mo. App. E.D. 1991), overruled in part on other grounds, State v. Carson, 941 S.W.2d 548 (Mo. banc 1997). In Gary we held the trial court erred by failing to grant a motion to strike a juror for cause. Id. at 452-53. The juror in Gray was a retired police officer from the same city as the victim, a police officer who was killed in an automobile collision with the defendant. Id. at 499-450. The juror had also worked closely with one of the witnesses for a few years, was from a family of police officers, and was a member of various police organizations. Id. at 452. The juror could not unequivocally state he could be fair and said he would probably be prejudiced in favor of police officers. Id. We find Gary is not on point.

Resp. Ex. L at 5-7.

     Pursuant to Williams the court must consider federal law applicable to the issue raised in

Petitioner's Ground 10. The Eighth Circuit has held:

     Missouri law provides that criminal defendants are entitled to a "full panel of qualified jurors before being required to make peremptory challenges" and that failure to sustain a meritorious challenge for cause is prejudicial error. State v. Wacaser, 794 S.W.2d 190, 193 (Mo.1990) (en banc).

Sloan v. Delo, 54 F.3d 1371, 1387 (8th Cir. 1995) (Sloan).

The Eighth Circuit has explained in regard to the impartiality of a juror as follows:

     The Sixth Amendment guarantees the defendant the right to trial "by an impartial jury. Impartiality is presumed "so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." United States v. Evans, 272 F.3d 1069, 1078 (8th Cir.2001) (quoting Lockhart v. McCree, 476 U.S. 162, 184, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986)), cert. denied, 535 U.S. 1029, 122 S.Ct. 1638, 152 L.Ed.2d 642 (2002). The test for assessing impartiality asks whether the prospective juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Johnson, 906 F.2d at 1288 (internal quotation marks omitted).

United States v. Wright, 340 F.3d 724, 733, (8th Cir. 2003).

38

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Eight Circuit has further held that:

> [W]hen a prospective juror admits during voir dire that he or she has some preexisting impression or opinion ... and when the district court then asks whether the prospective juror can lay that opinion aside and decide the case on the evidence presented and receives a positive response, the court's ruling on a motion to strike for cause is essentially one of credibility: In such cases the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case. Reynolds, 98 U.S. at 156-57. In habeas cases, the Supreme Court considers this issue "plainly one of historical fact" and accords state court determinations a presumption of correctness. Patton v. Yount, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Similarly, in federal criminal cases, we will not overturn the district court's finding that a prospective juror can put aside any pretrial opinion and render a verdict based upon the evidence at trial "unless the error is manifest." McNally, 485 F.2d at
>
> 403."

United States v. Blom, 242 F.3d 799, 805-806 (8th Cir. 2001) (Blom).

When considering a habeas petitioner's claim that he was denied effective assistance of trial counsel because his counsel failed to move to strike a venireperson for cause, the Eighth Circuit has clarified that the first consideration is whether counsel's performance fell below the objective standard of reasonableness.   See Wright v. Nix, 928 F.2d 270, (8th Cir. 1991) (citing Isom v.Lockhart, 847 F.2d 484, 486 (8th Cir.1988).  Upon considering Petitioner's Ground 10, the Missouri appellate court considered that counsel's making a motion to strike the allegedly biased juror would have been futile because the juror stated that he thought he could be fair and because the juror did not express any prejudice or bias. As stated above, under federal law, impartiality of a juror is presumed unless shown otherwise. See Wright, 340 F.3d at 733.   Additionally, as held in Strickland, 466 U.S. at 688-89, counsel's performance is presumed reasonable.  Failure to move to strike a juror where the juror has not expressed bias or when that strike would be futile certainly falls

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

within the realm of reasonable performance. As the Missouri appellate court applied the standard established in Strickland for determining effective assistance of counsel and as the Missouri appellate court considered that the allegedly objectionable juror did not express prejudice, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 10 is not contrary to federal law and that it is a reasonable application of federal law. See Wright, 340 F.3d at 733. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 10 is without merit and that it should be dismissed.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner has procedurally defaulted Grounds 3-7 and that these grounds should be dismissed. The court further finds that Petitioner's Grounds 1-2 and 8-10 are without merit and that Petitioner's § 2254 Petition should be dismissed in its entirety. The undersigned further finds that the that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

**Accordingly**,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; [Doc. 4]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an

extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.3d 356 (8th Cir. 1990)


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 31st  day of  March, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com